**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENNIFER FLORES**, <br><br> *Plaintiff,* <br><br> v. <br><br> **ADARE PHARMA SOLUTIONS, et al.**, <br><br> *Defendants.* | **Case No. 2:25-cv-06372-JDW** |

**MEMORANDUM**

Jennifer Flores asserts a litany of claims arising from the five months that she worked at Frontida BioPharm LLC, including race, national origin, and disability discrimination, retaliation, failure to pay required overtime, wrongful discharge, and breach of contract. Ms. Flores's federal race discrimination claims and her breach of contract claims can survive her employer's motion to dismiss, but I will grant the motion as to her remaining claims for reasons that follow. I will give her leave to amend both her FLSA and wrongful discharge claims.

## I.    BACKGROUND

On May 20, 2024, Jennifer Flores started working for Frontida BioPharm, LLC's Adare Pharma Solutions brand, which provides pharmaceutical development and manufacturing services.[1] Frontida hired her as a third shift Line Leader and assured her at the time that she

---

[1]    According to Frontida BioPharm, LLC, Adare Pharma Solutions is a brand, rather than a legal entity. The Adare organization acquired Frontida BioPharm Inc. in 2021. In

would not have to work overtime or on the weekend. However, Frontida reassigned her to an Operator position on the second shift in July 2024. Ms. Flores never received proper training for her job and complained to HR "that she was being asked to … perform tasks without proper instruction or understanding." (ECF No. 1 at ¶ 28.) Frontida promised Ms. Flores that it would provide her with two weeks of training as a Line Leader, but it never did. Despite this, in October 2024 Ms. Flores's supervisor told her that she would have to start working a different shift and run the production line. She alleges that Frontida trained other employees and provided them with the necessary resources to do their jobs.

On October 3, 2024, Ms. Flores provided Frontida with "a medical letter limiting work to 40 hours/week," but Frontida "ignored [these] medical restrictions." (*Id.* at ¶¶ 47-48.) Frontida also allegedly denied Ms. Flores rest breaks and meal periods and required her to work unpaid overtime.

During Ms. Flores's employment at Frontida, her supervisor made discriminatory remarks about her race and national origin. The supervisor said of Ms. Flores: "I don't understand why they hire you people." (ECF No. 3 at 17.) Ms. Flores interpreted this comment to refer to Hispanic people. She complained to HR about the comment and other interactions with her supervisor, but Frontida did not take any corrective action.

On October 15, 2024, Frontida terminated Ms. Flores "due to not completing the

---

2022, the Adare organization converted Frontida BioPharm, Inc. from a Pennsylvania corporation to a Pennsylvania limited liability company and renamed it Frontida BioPharm, LLC. Ms. Flores named Adare Pharma Solutions and Frontida BioPharm, Inc. as defendants in this matter. I refer to all three entities together as "Frontida."

training checklist." (ECF No. 3 at 34.) On March 20, 2025, Ms. Flores submitted an Inquiry Information form to the Equal Employment Opportunity Commission (the "Inquiry"), alleging that Frontida discriminated against her based on her national origin and ethnicity. She filed her final Charge Of Discrimination with the EEOC on August 15, 2025 (the "Charge"), asserting that Frontida discriminated against her "based on [her] race (Hispanic) and retaliated against [her] for reporting harassment, in violation of Title VII of the Civil Rights Act of 1964." (ECF No. 24 at 30.) On August 26, 2025, the EEOC advised her that it dismissed her charge because she did not file it by the applicable deadline.

On November 12, 2025, Ms. Flores filed a *pro se* Complaint, asserting claims against Frontida for: (1) discrimination, harassment, and retaliation in violation of Title VII and the Pennsylvania Human Relations Act (Counts 1 & 2); (2) failure to accommodate and retaliation in violation of the Americans With Disabilities Act and the PHRA (Counts 2 & 3); (3) wrongful termination and wage violations in violation of the Fair Labor Standards Act, the PHRA, and public policy (Count 4); and (4) breach of contract (Count 5). On March 5, 2026, Frontida moved to dismiss all of Ms. Flores's claims, and the motion is ripe for review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "[r]ules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786–87 (same). First, the court must identify the elements needed to set forth a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). When a plaintiff is proceeding *pro se*, I construe her allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

III.    ANALYSIS

A.    Title VII Claims

Ms. Flores's Title VII claims are not subject to dismissal based on an alleged failure to exhaust her administrative remedies. "To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the

4

alleged unlawful employment practice." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citation omitted). Ms. Flores did not file her charge with the EEOC until August 15, 2025—304 days after Frontida fired her. The EEOC dismissed the charge as untimely, but the EEOC's determination is not dispositive. At this stage of the proceedings, Frontida has not demonstrated that Ms. Flores's Title VII claims are time-barred.[2]

In *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court held that a filing with the EEOC (like an Intake Questionnaire) can be considered a "charge" of discrimination under the Age Discrimination In Employment Act where the filing: (1) contains information required by EEOC regulations and (2) can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402. In the Third Circuit, a submission to the EEOC need not "contain some magic combination of words explicitly seeking agency action" to qualify as a charge. *Holender v. Mut. Indus. N. Inc.*, 527 F.3d 352, 357 (3d Cir. 2008). Thus, where a plaintiff checked-off a box on an Intake Questionnaire requesting that the EEOC take remedial action,[3] the Third

---

[2]    "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). Thus, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Rivera v. New Castle Cnty. Police Dep't*, 152 F.4th 147, 153 (3d Cir. 2025).

[3]    The relevant language on the questionnaire stated: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name[.]" *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 113 (3d Cir. 2014).

Circuit concluded that the questionnaire was "unquestionably" a charge of discrimination. *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 113 (3d Cir. 2014). While the Third Circuit has not considered whether *Holowecki's* holding extends to Title VII claims, every circuit that has considered the issue has determined that it does. *See Equal Emp. Opportunity Comm'n v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 754 (5th Cir. 2020) (collecting cases). Thus, I expect that the Third Circuit would do the same.

Mindful that "charge-filing provisions are to be liberally construed" to serve the remedial purposes of anti-discrimination laws, *Rabzak v. Berks Cnty.*, 815 F.2d 17, 20 (3d Cir. 1987)—and given Ms. Flores's *pro se* status—I will not dismiss her Title VII claims on timeliness grounds at this stage of the proceedings because it is plausible that the Inquiry she submitted to the EEOC on March 20, 2025 is a charge of discrimination under *Holowecki*.[4] Indeed, the Inquiry contains all of the information that the implementing regulations require for charges of discrimination, including: (1) Ms. Flores's name and contact information; (2) Frontida's name and contact information; (3) a statement of facts (including dates) about the alleged discrimination; (4) the fact that Ms. Flores does not know how many employees work at Frontida; and (5) a statement that she did not file a previous charge or complaint about the same alleged conduct with the EEOC or another

---

[4]    Like the plaintiff in *Hildebrand*, Ms. Flores did not attach the Inquiry to her Complaint, but she did include it as an exhibit to her sur-reply. In general, "a court is limited to considering the pleadings in deciding a Rule 12(b)(6) motion," but I can consider the Inquiry in this instance because there is "no dispute as to its authenticity, and it directly corroborate[s] [Ms. Flores's] claim that [s]he ... satisfied the conditions precedent to filing suit ...." *Hildebrand*, 757 F.3d at 112 n.2.

agency. *See* 29 C.F.R. § 1601.12(a)(1)-(5); ECF No. 24 at 9-13. In addition—and drawing all reasonable inferences in Ms. Flores's favor—a reasonable person could construe the Inquiry to contain a request for the EEOC to vindicate Ms. Flores's rights. Specifically, Ms. Flores wrote: "I am filing a formal complaint with the EEOC regarding discrimination, harassment, and retaliation during my employment. ... I am seeking a full investigation and accountability for both the company and my supervisor[']s failure to address the discrimination and harassment I endured." (ECF No. 24 at 10.) Thus, it is plausible that Ms. Flores filed a timely charge of discrimination with the EEOC when she submitted the Inquiry on March 20, 2025, so I will not dismiss her Title VII claims as untimely at this stage of the proceedings.

### B.    ADA Claims

The same analysis does not save Ms. Flores's ADA claims, however. Like Title VII, a plaintiff asserting a claim under the ADA must file a charge with the EEOC within 300 days of the alleged discrimination. *See* 42 U.S.C.A. § 12117(a). But neither Ms. Flores's Inquiry nor her Charge[5] contains a complaint about a failure to accommodate or retaliation under the ADA. Instead, Ms. Flores listed "[n]ational origin and/or ethnicity" as the basis for her claim of discrimination on the Inquiry (ECF No. 24 at 10), and her Charge lists discrimination and harassment based on race "in violation of Title VII of the Civil Rights Act of 1964." (*Id.* at 30.)

---

[5]    Again, Ms. Flores did not attach the Charge to her Complaint. However, because she referenced the Charge in her Complaint, I may consider it in connection with Frontida's motion to dismiss. *See Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (quotation omitted).

Given these undisputedly authentic documents, which are integral to Ms. Flores's claims, it is not plausible that Ms. Flores filed a timely charge of disability discrimination, and I will dismiss her claims under the ADA with prejudice.

### C.    PHRA Claims

Ms. Flores's parallel PHRA claims are also subject to dismissal. "To bring suit under the PHRA, an administrative complaint must first be filed with the [Pennsylvania Human Relations Commission] within 180 days of the alleged act of discrimination." *Mandel*, 706 F.3d at 164 (citation omitted). Thus, to assert her PHRA claims, Ms. Flores had to file an administrative complaint with the PHRC (or dual-file a charge with the EEOC) by April 13, 2015, which is 180 days after her termination on October 15, 2024. She failed to do so, so she cannot proceed with her PHRA claims.

Ms. Flores does not allege that she filed an administrative complaint with the PHRC at any point. At most, the Charge indicates that Ms. Flores elected for dual-filing when she filed with the EEOC on August 15, 2025. (*See* ECF No. 24 at 31.) But that does not render her PHRA claims timely because she filed her Charge well beyond the 180-day deadline. *See Mandel*, 706 F.3d at 165 ("[T]he 300–day extended statute of limitations applies only to the [EEOC] Charge, not to the PHRA filing."). While the Inquiry might qualify as a timely charge, there is no indication in it that Ms. Flores intended to dual-file with the PHRC when she submitted the Inquiry. Thus, I will dismiss her PHRA claims with prejudice as time-barred.

### D.    FLSA Claim

Ms. Flores has failed to state a claim for alleged violations of the FLSA based on

unpaid overtime. "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 242 (3d Cir. 2014) (quotation omitted). Here, Ms. Flores alleges that Frontida denied her rest breaks and meal periods and required her "to work unpaid overtime." (ECF No. 1 at ¶ 52.) Those allegations are far too conclusory and undeveloped to state a claim for alleged violations of the FLSA. And the exhibit on which Ms. Flores relies to support her FLSA claim does not indicate that Frontida failed to pay her overtime wages after she worked more than 40 hours in a week. (*See* ECF No. 3 at 22.)

In addition, Ms. Flores failed to respond to Frontida's arguments as to why her Complaint does not set forth a plausible FLSA claim. Even though she is proceeding *pro se*, Ms. Flores "may not stand silent in the face of a motion, expecting the Court to generate arguments on [her] behalf by piecing together arguments and materials scattered throughout the record of the case." *Bridges v. Colvin*, 136 F. Supp. 3d 620, 630 (E.D. Pa. 2015), *aff'd*, 672 F. App'x 162 (3d Cir. 2016). "To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." *Id.* (quotation omitted). Indeed, the Court's Local Rules Of Civil Procedure permit judges to grant motions to dismiss as uncontested, where plaintiffs fail to oppose them. See L. R. Civ. P. 7.1(c). In the absence of any response from Ms. Flores as to the viability of her FLSA claim, I will dismiss that claim.

### E.      Wrongful Termination Claim

Ms. Flores's wrongful termination claim also fails. Though she claims that her "[t]ermination violated public policy," Ms. Flores never identifies the applicable public policy. (ECF No. 1 at 12.) As such, she has not pled a plausible claim for wrongful termination pursuant to Pennsylvania public policy. *See DeVore v. Metro Aviation, Inc.*, 328 A.3d 1012, 1017 (Pa. Super. Ct. 2024). And again, Ms. Flores's failure to respond to Frontida's arguments as to this claim warrants dismissal as well. Thus, I will dismiss her wrongful termination claim.

### F.      Breach Of Contract Claims

Though Ms. Flores did not address Frontida's arguments as to her breach of contract claims, I will not dismiss those claims on that basis because Frontida's arguments are nothing more than strawmen. Frontida contends that Ms. Flores cannot maintain a breach of contract claim based on her termination because she was an at-will employee. However, a fair reading of Ms. Flores's Complaint makes clear that Ms. Flores's breach of contract claims are not based on her termination. Instead, she contends that Frontida breached the "Line Leader employment agreement" by: (1) delaying payment of wages by 6 days; (2) failing to provide her with Line Leader training; and (3) honoring the agreed-upon shift and leadership responsibilities. (ECF No. 1 at 12.) Frontida's motion ignores those alleged breaches and fails to explain why Ms. Flores's at-will employment status prevents her from raising breach of contract claims that are not based on her termination. Thus, I will not dismiss those claims.

## IV.   CONCLUSION

Ms. Flores has failed to state a claim for violations of the ADA and PHRA because those claims are time-barred, and she has not alleged facts that set forth a plausible violation of the FLSA or Pennsylvania public policy. However, Frontida has not demonstrated that Ms. Flores's Title VII and breach of contract claims are subject to dismissal, so she may proceed with those claims, and she may file an amended claim to add additional facts that might permit her to salvage her FLSA and wrongful discharge claims. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 27, 2026